## CRIMINAL RECORDS

### COLLEGES AND UNIVERSITIES – FACULTY ACCESS TO CRIMINAL HISTORY INFORMATION ABOUT STUDENTS

October 5, 1994

*The Honorable John J. Hafer*
*Maryland Senate*

You have requested our opinion concerning the circumstances, if any, under which criminal history information about a student at Frostburg State University may be disclosed by the University Police to a faculty member or other member of the university community.

For the reasons stated below, we conclude that the University Police generally may not disclose the student's criminal history record information to an interested faculty member or other person.

## I

### Background

As we understand the situation, a student at Frostburg State University was charged with indecent exposure. The University Police had obtained information about the arrest from the Central Repository of the Department of Public Safety and Correctional Services. After word of the arrest spread among members of the college community, a faculty member made an informal request to the University Police for the arrestee's conviction record, if any. The University was advised by its counsel that State law prohibited the police from disclosing this information. You suggest in your letter requesting an opinion that, in order to further the welfare of other members of the community, the criminal history information should be available to the public.

## II

### Criminal History Record Information

Under federal regulations, the term "criminal history record information" ("CHRI") is defined as "information collected by criminal justice agencies on individuals consisting of identifiable

descriptions and notations of arrests, detentions, indictments, information, or other formal criminal charges, and any disposition arising therefrom, sentencing, correctional supervision, and release." 28 C.F.R. §20.3(b). Any information that the Frostburg State University Police may have collected about the student who was charged with a crime constitutes CHRI.

The federal regulations require that "nonconviction data" be subject to limited dissemination only.[1] These data may be disseminated to criminal justice agencies, certain other authorized individuals and agencies, and researchers. 28 C.F.R. §20.21(b). Apart from these particular requirements, however, the federal regulations generally defer to state law regarding the dissemination of CHRI: "States and local governments will determine the purposes for which dissemination of [CHRI] is authorized by state law, executive order, local ordinance, court rule, decision or order." 28 C.F.R. §20.21(c)(3).

Under the Maryland scheme governing CHRI, the Secretary of Public Safety and Correctional Services is to issue regulations that govern the criminal justice information system in Maryland. Article 27, §746(a). *See generally* 63 *Opinions of the Attorney General* 197, 214-15 (1978). The Secretary's regulations are to address, among other things, the "dissemination of criminal history record information by the courts and all other criminal justice agencies." Article 27, §746(b)(1).

The Secretary's regulations differentiate between nonconviction CHRI and conviction CHRI. Dissemination of nonconviction CHRI to a private party is flatly prohibited "unless the private party petitioner is expressly authorized by statute, ordinance, executive order, or court rule, order, or decision specifying the right of access to nonconviction CHRI and the purpose and conditions for access." COMAR 12.15.01.13A(2).

---

[1] The term "nonconviction data" means "arrest information without disposition if an interval of one year has elapsed from the date of arrest and no active prosecution of the charge is pending" or information otherwise indicating that charges will not be pursued, as well as acquittals and dismissals of charges. 28 C.F.R. §20.3(k). The federal regulations also impose certain stringent limitations on the dissemination of juvenile records. 28 C.F.R. §20.21(d).

The grounds for disclosure of conviction CHRI are less restrictive, but still narrow. The Central Repository is prohibited from disclosing such CHRI to a private party unless the party "convincingly demonstrates" that the information pertains to someone who "as an employee, ... volunteer, or member of the association" "will have the capability to":

> (a) jeopardize the life or safety of individuals;
>
> (b) cause significant loss or damage by illegally accessing or misusing the fiscal or nonfiscal assets of the employer ... or public; or
>
> (c) otherwise engage or participate in criminal conduct in violation of State, local, and federal law.

COMAR 12.15.01.13A. It is highly doubtful whether a student on a college campus is, with respect to a faculty member, "an employee, ... volunteer, or member of [an] association."[2] Thus, a faculty member petitioning the Central Repository for conviction information about a student would not be able to obtain it.

The regulations contemplate a role for a law enforcement agency like the University Police in responding to private party requests for CHRI. But the police would be authorized to do so only if a "written agreement" authorizes the police to act on behalf of the Central Repository in responding to CHRI inquiries. COMAR 12.15.01.10B. It is our understanding that no such written agreement exists between the University Police and the Central Repository. Even if there were such an agreement, the police would be subject to the same criteria for disclosure of conviction CHRI as is the Central Repository itself and, for the reasons explained in the previous paragraph, we doubt that conviction CHRI would be

---

[2] It is also doubtful whether any of the three types of harm specified in the regulation would be applicable.

disclosable to a faculty member interested in the criminal history of his or her students.[3]

Should you believe that, as a policy matter, information of this kind ought to be generally available from the University Police to members of the university community, a change in the law will be needed. The change could be accomplished through the rulemaking process by the Secretary or, of course, by legislation. At least with respect to conviction CHRI, federal law would not be an impediment to such a change in the State's restrictions.[4]

### III

### Conclusion

In summary, it is our opinion that State law currently prohibits the Frostburg State University Police from disclosing to a faculty member criminal history record information about a student.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[3] We are not here discussing the situation in which a student might be an employee supervised by a faculty member (a research assistant, for example). In that situation, a governmental "appointing authority" may obtain access to both conviction and nonconviction CHRI under a different regulation, COMAR 12.15.01.12B(1). *See also* 71 *Opinions of the Attorney General* 242 (1986) (legality of inquiring about prospective employee's criminal convictions).

[4] We have considered whether the federal Family Educational Rights and Privacy Act, commonly known as the Buckley Amendment, would bar the University from disclosing CHRI relating to a University student. Under 20 U.S.C. §1232g(a)(4)(B)(ii), the "education records" that the Buckley Amendment generally bars from disclosure without a student's consent excludes records maintained by a law enforcement agency of the educational agency or institution that were created by the law enforcement unit for the purpose of law enforcement." Thus, we do not believe that the Buckley Amendment would prohibit a change in State law to allow a greater dissemination of conviction CHRI about students.